EASTERN DIST.
*January,* 1836.

BAUMGARD
*vs.*
MAYOR ET AL.

When all the documents mentioned in the certificate of the clerk to the record, are not produced in the Supreme Court, the appeal will be dismissed.

---

## BAUMGARD *vs.* MAYOR ET AL.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF NEW-ORLEANS.

Where property is seized for a violation of a city ordinance, although the seizure is lawful in its commencement, yet if the city authorities fail to pursue the requisites of the law, in advertising and disposing of it, the acts of the officer making the seizure will be considered as a trespass, *ab initio,* for which his constituents are responsible.

In this case the plaintiff claims an omnibus and pair of horses, which he alleges have been illegally and forcibly taken from his possession, by the agent of the corporation of New-Orleans, and by them illegally detained. He claims one thousand dollars in damages, for the property seized and the loss sustained thereby, or the return of the carriage and

EASTERN DIST. horses, and one hundred dollars in damages for their illegal
January, 1836. seizure and detention.

BAUMGARD
vs.
MAYOR ET AL.

The corporation, by its attorney, pleaded a general denial, and averred, that if the carriage and horses had been arrested as alleged, it was for lawful cause, and not illegal, as alleged by the plaintiff.

Upon this issue the parties went to trial.

The evidence showed, that the plaintiff's omnibus and horses were arrested by the commissioner appointed by the corporation to inspect carriages, drays, &c., as running in contravention of a city ordinance, approved December 1st, 1828, the first and second articles of which require every person running a coach, &c., within the limits of the city, to take out a license ; the third article prescribes a penalty of ten dollars for each contravention of the first article, by running without a license ; the fourth article says: "The mayor shall cause to be stopped and carried before a competent tribunal every carriage found running without a license, or without numbers ; the magistrates are to detain said carriages and horses drawing the same, and send 'them to a place of deposit, designated by the mayor, there to remain fifteen days subject to the claim of their proprietors, causing in the mean time full notice to be given thereof in the newspapers. If not reclaimed at the end of fifteen days, the magistrates are duly authorised to cause the objects seized to be sold conformably to law, and the proceeds applied to the payment of all fines, penalties and costs incurred ; the surplus, if any, to be returned to the owners," &c.

The 6th article of this ordinance requires " all carriages designated in the first article, to be numbered with figures on a tin plate," &c.   See *City Laws, page* 71.

It appeared the plaintiff had failed to take out a license and number his carriage as required.

The driver of the carriage deposed that it was seized, together with the horses, on the 2d of February, 1835, while standing in Canal-street, by a commissioner of the city police and carried to the City Hall.   He estimates the carriage to be worth six hundred dollars and the horses one hundred dollars.

Lalande, the commissioner, deposed that he arrested the carriage and horses for want of a license, and number on the carriage, as required by the city ordinance. The horses were tendered to the driver after taking the carriage to the mayor's office, but he refused to receive them. The carriage was then sent to a place of deposit, and the horses to a livery stable.

The seizure took place on the 2d of February, and on the 5th the plaintiff commenced this suit by filing his petition. There were no steps taken to advertise and sell the property seized. No proof of any demand having been made on any of the agents of the corporation for the carriage and horses before suit was instituted. An agent of the plaintiff afterwards demanded the horses from the livery stable keeper, but was informed he must pay the expenses first.

The parish judge considered the seizure as having been lawfully made in the first instance, and no proof being made of any demand and offer to pay the penalty and costs incurred, judgment was rendered in favor of the defendants. The plaintiff appealed.

*M'Millen*, for the plaintiff.

We contend that there is error in the judgment of the Parish Court, because the ordinances of the City Council do not authorise the corporation to take possession of plaintiff's property except by the intervention of justice. See *Digest of City Ordinances, page* 71.

2. If the city ordinances contemplated such proceedings, they are illegal and unconstitutional. No person can be deprived of his property, except by due course of law. *Amendments to Constitution of the United States, section* 25.

3. The corporation can in no instance, for a violation of its ordinances inflict a fine or penalty beyond one hundred dollars; here they have taken property, inflicted fines, and caused damages to the amount of several thousand dollars.

4. The person arresting the horses and carriage, was neither a commissary, a member of the city guard or police officer.

16

*Eustis,* for the corporation, contended, that the plaintiff's carriage was in flagrant violation of the city ordinances, being without a license and without a number. *City Ordinance of 1828, articles 1 and 6. Digest of Ordinances, pages 71 and 73.*

2. That therefore the arrest of the carriage and horses was lawful under the ordinances. *Ibid., article 4.*

3. That the defendants *were not bound* to institute any legal proceedings in relation to the violation of the ordinance by plaintiff. They could waive it or remit the fine. *Digest of City Ordinances, page 301.*

4. That the carriage and horses were taken to the proper place. " That the police officers and city guards be authorised to arrest and keep in their custody all carts, drays and other carriages not *bearing an apparent number,* as required by the ordinance relative thereto, and that said carts, drays or other carriages shall be brought *before the principal and there detained until their owners shall claim them.*" *Digest of Ordinances, page 301.* See also, *Ordinances cited, art. 4, page 73.*

5. The owner never having claimed them before the suit, there was no fault on the part of the defendants—their officer having taken the carriage *before the principal,* as is proved by the testimony of his own witnesses, and if the plaintiff chose to leave it there, it is his own act *Volenti non fit injuria.*

6. Every act proved to have been done by the agents of the defendants is in conformity with the ordinances of the city, the legality of which is indisputable under the law of the legislature of March 10th, 1834, section 3. See *Laws of 1834, page* 137.

*Mathews, J.,* delivered the opinion of the court.

This is an action in which the plaintiff seeks to recover from the corporation, a carriage called an omnibus, and a pair of horses, or their value, in consequence, as he alleges, of an illegal seizure and detention of this property, by an officer acting for the body politic.

The answer to the complaint, contains a general denial and justification. Judgment was rendered for the defendants in the court below, and the plaintiff appealed.

The seizure was made under an ordinance of the city, relating to all kinds of carriages used to carry passengers or freight for hire, and was perhaps lawful in its commencement; but the steps taken in pursuance of the seizure, are alleged to have been illegal and without authority, the effect of which has been arbitrarily to deprive the plaintiff of his property, without any legal or just cause.

The ordinance relied on, in justification of the proceeding adopted by the corporation, was passed on the 30th October, 1824, and the property seized comes clearly within the purview of the first article. The fourth article directs explicitly the disposition which must be made of property seized and stopped under its authority. It is made the duty of the officer seizing, to carry the things seized before a competent tribunal, to be sent to a place of deposit designated by the mayor; notice is required to be given of these proceedings, and if no claim be put in on the part of the proprietor within fifteen days, the magistrate is authorised to cause the objects thus arrested to be sold, and appropriate the proceeds to the payment of any fine which may be imposed, free of license and taxes, and if there be any surplus it is to be placed in the treasury of the city, subject to the order of the proprietor. It does not appear that any of these measures were pursued in the present instance, and as the provisions of the ordinance are restrictive of the free use of property by owners, to justify such a short handed mode of redressing the violation of the law, all the means calculated to relieve a proprietor ought to be shown to have been fully complied with. It is however urged in argument as an excuse for not having acted strictly in conformity with the requisites of the ordinance, that the plaintiff was so prompt in endeavoring to recover his property by immediately commencing suit, that the defendants had not time to pursue the regular course pointed out to them. We are unable to assent to the force of this argument, because the law made it the duty of the officer who seized to carry the property directly before a competent tribunal; and besides it would have been very easy for the defendants in answer to the plaintiff's action to have insisted on proper

The property is seized for a violation of a license, although the seizure is lawful in its commencement, yet if the city authorities fail to pursue the requisites of the law in advertising and disposing of it, the acts of the officer making the seizure will be considered as a trespass *ab initio*, for which his constituents are responsible.

HARVARD LAW SCHOOL LIBRARY

EASTERN DIST. redress for the violation of the ordinance, as a condition on
January 1836. which the property would be restored to the owner.     Having
BLOODGOOD failed in the performance of all these things, the act of their
ET AL. officer may well be considered as a trespass *ab initio*, for which
*vs.*
HAWTHORN. his constituents are responsible.

It is, therefore, ordered, adjudged and decreed, that the
judgment of the Parish Court be avoided, reversed and
annulled.     And it is further ordered, adjudged and decreed,
that the defendants and appellees do deliver to the plaintiff
and appellant the carriage and horses which were seized and
arrested by their officer; or in default thereof that they pay to
him the sum of eight hundred dollars ; and it is moreover
ordered, that this cause be remanded to the court below to
cause the damage which the plaintiff has suffered, (if any he
has suffered by the misconduct of the defendants) to be
assessed, they to pay the costs in both courts which have
already accrued.